# FRANK LICHTER AND ANOTHER v. ROBERT BLETCHER, EXECUTOR OF ESTATE OF MARY BLETCHER, AND ANOTHER.

123 N. W. (2d) 612.

August 23, 1963—No. 38,834.

*Duxbury & Duxbury,* for appellants.
*Nelson & Oyen,* for respondents.

OTIS, JUSTICE.

This is an appeal from a judgment of the district court affirming an order of the probate court of Chippewa County holding that bequests to beneficiaries who predeceased testatrix were not intended as part of a "class gift" and therefore lapsed, becoming part of the residue.

Decedent, Mary Bletcher, suffered a stroke on Labor Day, 1956, at a time when she was 68 years of age. The following February her husband, Arthur D. Bletcher, to whom she had been married for over 40 years, died, leaving no issue. On April 21, 1957, testatrix executed a will, the pertinent provisions of which are as follows:

"Second: I give, devise and bequeath unto my sisters, Kate Bouquet and Sue Lovett, my brothers, Frank Lichter and Emil Lichter, an undivided one-half of all property of which I may die possessed, be the same real, personal or mixed, and wheresoever situated, share and share alike.

"Third: I give and bequeath unto Janet and Barbara, nieces of my deceased husband, Arthur Bletcher, each the sum of five hundred dollars.

"Fourth: All the rest, residue and remainder of my property, real, personal or mixed, I give, devise and bequeath unto Robert Bletcher, nephew of my deceased husband, Arthur Bletcher."

The following month she executed a codicil specifically bequeathing to her sisters, nieces, and nephew various articles of furniture, linen, china, jewelry, and other items of tangible personal property.

Thereafter her brother Emil died on November 9, 1957, and her sister Kate died on March 16, 1958. With knowledge of the fact that they had predeceased her, testatrix executed a second codicil on May 28, 1958, bequeathing to the Lutheran Church the proceeds of the sale of a lake cottage and concluding with the statement:

"* * * as herein modified, amended and extended I do hereby confirm and republish my last will and testament, together with the first codicil thereto attached."

On October 7, 1958, testatrix died, without remarrying and without issue.

It is undisputed that the closest blood relatives who survived testatrix were appellants, Frank Lichter, her brother, and Susan Lovett, her sister. It also appears that at the time of the execution of her will her husband's next of kin were respondent, Robert Bletcher, a nephew, and Janet Bletcher Karesh and Barbara Bletcher Day, nieces. The evidence indicates and the court found all of these beneficiaries enjoyed a close, cordial relationship with testatrix.

Both the probate and district courts acknowledged the difficulty of construing the will and codicils. However, the probate court gave considerable weight to the expression "share and share alike" as an indication of an intention to bequeath to individuals rather than to a class. The court also noted that the will did not necessarily give each branch of the family half of the estate since the respondent received all of the residue including any lapsed gifts. The trial court was of the opinion that the failure to use words of survivorship was of particular significance.

In support of their contention that a class gift to brothers and sisters was intended, appellants argue that it is illogical to assume decedent republished her original will, having knowledge that two beneficiaries were deceased, unless she expected the surviving beneficiaries to have the continuing benefit of a class gift. They further assert that brothers and sisters are a natural class, bearing the same relationship to one another as to the testatrix; that they were decedent's closest blood relatives and the natural objects of her bounty, and presumably enjoyed a preference over strangers to the blood. Finally,

appellants urge that legal niceties aside, the effect of the original will was to give half of decedent's estate to her own relatives and the other half to the relatives of her late husband.

Respondent in arguing for affirmance stresses decedent's failure to use any expression of survivorship and argues that the designation of beneficiaries by name and the use of the words "share and share alike" create a tenancy in common and make a prima facie showing that no class gift was intended. In addition, respondent asserts that the policy against intestacy arising from a lapsed gift is not applicable because of the existence of a residuary disposition. He points out that decedent had logical reasons for preferring a young beneficiary with small children to those who were well along in years. Finally, he argues that there was no intent to treat the beneficiaries equally, as gifts created in the second codicil all came from his share of the residue; that the will was drafted by an experienced attorney who would have used words of survivorship had this been testatrix' intention, and that having failed to do so she has indicated satisfaction with permitting the gifts to lapse.

█ Since neither of the beneficiaries who predeceased Mary Bletcher was survived by issue, our antilapse statute is inapplicable.[1] The only question, therefore, is whether their bequests become a part of the residue bequeathed to respondent, or whether the second paragraph of the will constitutes a class gift conferring a right of survivorship on the appellants under common-law rules. It is axiomatic that the function of the court is to determine the dominant purpose of the testatrix from an examination of the entire will, the codicils, and the extrinsic circumstances which may have influenced her, both at the time of their execution and thereafter.[2]

---

[1]Minn. St. 525.203 provides: "If a devise or bequest be made to a child or other blood relative of the testator who dies before the testator leaving issue who survive the testator, such issue shall take the same estate which such devisee or legatee would have taken if he had survived, unless a different disposition be made or required by the will."

[2]In re Trust Created by Will of Crosby, 224 Minn. 173, 179, 28 N. W. (2d) 175, 179.

We are asked to infer a lapse because the will was drafted by an experienced attorney who omitted words of survivorship.[3] This argument has little force. It is because of the failure to include substitutionary provisions expressing the intention of the testatrix with clarity and precision that we are obliged to look for other evidence of what she had in mind. This is not a case where the draftsman employed words of art easily understood and readily construed. It may be that Mrs. Bletcher simply assumed she would predecease the beneficiaries and gave no thought to the consequences of her surviving them. It thus becomes the duty of the court to decide what she would have intended had she correctly foreseen the events which occurred.[4] In so doing it is essential that we do not permit technical rules to control and subvert testatrix' actual intention.[5] However, we are permitted to look to certain canons of interpretation which may not constitute substantive and definitive rules of law, arbitrarily governing our decision, but are, nevertheless, useful aids to construction.[6]

■ The most common definition of a class gift is that found in 4 Page, Wills (Bowe-Parker Rev.) § 35.1:

"A gift to a class is a gift of 'an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, and who are all to take in equal or in some other definite proportions, the share of each being dependent for its amount upon the ultimate number.' (1 Jarman on Wills [6 ed.] 336.)"

It has been criticized[7] but quite uniformly applied.

---

[3]Ibid.

[4]Cooley, *What Constitutes a Gift to a Class,* 49 Harv. L. Rev. 903, 931.

[5]In re Long's Estate, 121 N. Y. S. (2d) 183, 186.

[6]In re Trust Under Will of Bell, 147 Minn. 62, 68, 179 N. W. 650, 652; Peck v. Peck, 76 Wash. 548, 553, 137 P. 137, 139.

[7]Cooley, *What Constitutes a Gift to a Class,* 49 Harv. L. Rev. 903, 926; Doshier, *Wills—Class Gifts—Naming the Beneficiaries,* 8 Ark. L. Rev. 509; Annotation, 75 A. L. R. 773, 777; 57 Am. Jur., Wills, § 1256, p. 830, which suggests as an alternative definition the following: "a testamentary gift is one to a class where the aggregate property given to the group, or the several items assigned to the members, may, according to

The principal attributes of a class gift which distinguish it from other bequests are (1) that the number of beneficiaries in the class may increase by birth or decrease by death between the time the instrument is executed and the time it takes effect, and (2) upon the death or other disability of a beneficiary within the class, prior to the effective date of the instrument, no lapse occurs and his distributive share passes to the remaining beneficiaries within the class by right of survivorship, as in the case of joint tenancy.[8]

■ The bequest here in question was to "my sisters, Kate Bouquet and Sue Lovett, my brothers, Frank Lichter and Emil Lichter." The basic question is whether Mrs. Bletcher regarded her brothers and sisters as a group, or whether having referred to them by name she intended to bequeath to them individually.[9] It is the general rule that a bequest to beneficiaries by name results in a tenancy in common, unless the testatrix has expressed a contrary intent.[10] If the purpose of designating beneficiaries "nominatim" is merely to help ascertain the correct members of the class, the class gift will not be defeated.[11]

■ The authorities are by no means in accord concerning the effect of such expressions as "share and share alike" and "to be divided equally." Some courts hold that they simply specify the manner in which the class gift is to be divided at the date of death and serve no other purpose.[12] Others find such language decisive

---

the intent of the testator, be taken by such of the persons indicated as are in being at the time of the testator's decease, or at such time subsequent to the date of the will as the membership of the class is to be effectually ascertained." See, also, Annotation, 61 A. L. R. (2d) 221.

[8] In re Trust Under Will of Bell, 147 Minn. 62, 69, 179 N. W. 650, 653.

[9] Restatement, Property, § 279.

[10] Restatement, Property, § 280; see, also, In re Ives' Estate, 182 Mich. 699, 706, 148 N. W. 727, 729; Fowler v. Whelan, 83 N. H. 453, 454, 144 A. 63, 65, 75 A. L. R. 752, 754.

[11] 4 Page, Wills (Bowe-Parker Rev.) § 35.1, p. 489.

[12] Fowler v. Whelan, 83 N. H. 453, 456, 144 A. 63, 66, 75 A. L. R. 752, 756; Walker v. First Trust & Savings Bank (8 Cir.) 12 F. (2d) 896, 902, 75 A. L. R. 757, 765; Restatement, Property, § 282, *comment b*; Cooley, *What Constitutes a Gift to a Class*, 49 Harv. L. Rev. 903, 931.

of an intent to make individual bequests.[13] We incline to the view adopted by the Restatement that these expressions no longer have significance. It appears that courts which have given them weight may only have reflected an historical transition from favoring joint tenancies to preferring tenancies in common.[14]

■ Each party spells out an intention favorable to his position from the fact that Mrs. Bletcher in her codicil republished the sections here relevant with knowledge that her brother Emil and her sister Kate predeceased her and without adopting any substitutionary provision in recognition of their death. It is suggested by appellants on the one hand that this omission is evidence of her conviction that the law would permit the survivors to receive the shares of their deceased brother and sister. Respondent argues with equal force that the testatrix, having had the benefit of counsel, understood that the gifts would lapse and become a part of the residue. Unfortunately, her attorney failed to take the stand to shed light on this crucial issue. Cases which have discussed the effect of failing to make substitutionary bequests by codicil after the death of a beneficiary are not particularly persuasive.[15] While it is a factor to be considered, we agree with the Restatement in holding that it is of no great significance, standing alone.[16] A somewhat stronger argument could have been made by appellants if the effect of the lapse had been a partial intestacy. Here, however, the residuary disposition to respondent prevents this result.[17]

■ In the instant case we find none of the rules of construction decisive. There are definite indications, however, that the testatrix wished her family and that of her late husband each to receive one-

---

[13]Lawes v. Lynch, 6 N. J. 1, 6, 76 A. (2d) 885, 888; In re Brown's Estate, 324 Mich. 264, 268, 36 N. W. (2d) 912, 913.

[14]Cooley, *What Constitutes a Gift to a Class,* 49 Harv. L. Rev. 903, 922.

[15]Fowler v. Whelan, *supra*; In re Ives' Estate, *supra*; In re Long's Estate, *supra*; Continental Ill. Nat. Bank & Trust Co. v. Eliel, 17 Ill. (2d) 332, 161 N. E. (2d) 107.

[16]Restatement, Property, § 282(a).

[17]Peck v. Peck, 76 Wash. 548, 558, 137 P. 137, 141.

half of her estate. The fact that by her first codicil she disposed of various items of tangible personal property somewhat indiscriminately to members of both families does not, in our opinion, detract from the central purpose she has elsewhere expressed. It is the evidence of "group-mindedness" which militates most strongly in favor of finding a class gift.[18]

Considering all the guideposts we have discussed, we are of the opinion that the terms of the will and codicils and the surrounding circumstances compel a finding that Mrs. Bletcher intended to treat each branch of the family equally. The testamentary provisions themselves come within the requirements of a class gift. The bequest to her brothers and sisters was in an aggregate amount of one-half of her estate; the number of such beneficiaries was uncertain to the extent that it could be, and was, diminished by death and was therefore only ascertainable at the time of the death of the testatrix; and the proportion each was to take was definitely fixed.

While respondent apparently was solicitous of his aunt and enjoyed a warm relationship with her, there is nothing in the record to indicate she preferred him to her brothers and sisters. It seems unlikely that she would have intended strangers to her blood to receive three-quarters of her estate while her next of kin received only one-quarter. In support of our conclusion we rely on a number of cases which have construed similar wills, although obviously no two circumstances are identical. Restatement, Property, § 281, seems apposite in specifying as factors which tend to establish a class gift the manifested intent of the testatrix for equal or proportional distribution as between two groups of persons. An early Massachusetts case has construed a will resembling that of Mrs. Bletcher by finding a class gift intended. Swallow v. Swallow, 166 Mass. 241, 242, 44 N. E. 132, 133. There the bequest was as follows:

---

[18]Cooley, *What Constitutes a Gift to a Class*, 49 Harv. L. Rev. 903, 930; Doshier, *Wills—Class Gifts—Naming the Beneficiaries*, 8 Ark. L. Rev. 509, 510; Estate of Bloch, 227 Wis. 468, 278 N. W. 875; 41 Mich. L. Rev. 749.

"I bequeath and devise one half of the remainder of my estate, whether it be real, personal, or mixed, to my heirs, Zephaniah P. Proctor and Rebecca P. Swallow, and the remaining half to the heirs of Isaac O. Taylor, my late husband, namely, Mary T. Bennett, Samuel S. Taylor, and Don G. Taylor, the son of Alpheus Taylor, deceased."

Two of the husband's heirs predeceased testatrix and the court, finding a class gift, decreed one-half of her estate to the husband's remaining relative. Although the court was influenced by its announced reluctance to find any intestacy and acknowledge that it was a close case, it found that the dominant intention of the testatrix was to bequeath half of the remainder to her own heirs and half to the heirs of her husband. The same result was reached by the Michigan court in In re Ives' Estate, 182 Mich. 699, 701, 148 N. W. 727, 728. The bequest there was "to my sister, Hattie Butterfield, and my brothers, Wesley and Dwight Skinner, to each an equal undivided one-third." One named beneficiary predeceased testatrix. The court held that the immediate blood relatives constituted a natural and complete class and that even though designated by name it plainly appeared from the will that the survivors should take the whole.

A New Jersey court construed a similar bequest "to my nephew, Arthur E. C. Heller, and to my nieces," naming them, in In re Heller, 14 N. J. Super. 152, 81 A. (2d) 418. The court there stressed the likely interest of testator in the welfare of the group as distinguished from that of particular individuals. There, as here, a natural class was involved. The court pointed out that the rule establishing the effect of a class gift in effect supplies a deficiency in the will to implement what testator would have intended had he given the matter any thought. While contrary authority may be found, we are of the opinion that the cases cited reach a result which is consistent with what this testatrix intended as expressed in her will and codicils and as evidenced by her relationship with the beneficiaries whom she remembered. The judgment appealed from is therefore reversed.
Reversed.